In the Matter of STEVEN R. WECHSLER (Admitted as STEVEN ROBERT WECHSLER), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 5, 1991

**APPEARANCES OF COUNSEL**

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Irving Anolik* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Steven R. Wechsler, was admitted to the practice of law in New York by the Second Judicial Department on March 14, 1978, under the name Steven Robert Wechsler, and at all relevant times has maintained an office for the practice of law in the First Judicial Department.

Respondent was charged with intentionally converting to his own use escrow funds of two separate clients in two unrelated transactions, and with passing bad checks to those clients when they asked him for their money. Temporarily suspended by order of this court dated November 1, 1988 (Matter of Wechsler, 141 AD2d 204), he thereafter admitted the charges in a prehearing stipulation, and the focus of the hearing was on evidence in mitigation.

Through his own testimony and that of several character witnesses, respondent sought to convince the Hearing Panel that his misconduct was aberrant and uncharacteristic, and due to "severe psychological and probably psychiatric problems" for which he is now undergoing medical treatment. These problems were brought on by a series of closely occurring personal tragedies, including the death of both of his wife's parents within nine months of each other, the death of his own mother in a car accident, the birth of a first child without the exterior part of one ear, the birth of a second child who became ill and required surgery, and his inability to cope with an emotionally distraught wife who made impossible demands upon him for money. He testified that having undergone therapy, he now understands that he converted the escrow funds in order to avoid conflict with his wife. Respondent has made restitution of the converted funds, albeit in one instance not until after the disciplinary proceedings were well under way, and indeed not until a civil action had been commenced against him.

The Hearing Panel, recommending disbarment, found that the personal tragedies to which respondent testified occurred "substantially before" his misconduct and that "there was no proof of a direct connection between these events and his misconduct." It also found that "there was a lack of credible and compelling proof that Respondent's wife was putting financial demands on him or any substantiation of the alleged emotional distress that he incurred due to his wife's emotional problems." The Hearing Panel also commented that "financial

need, in itself, cannot be considered as valid mitigation" where an attorney intentionally and knowingly converts clients funds. Opposing the Committee's motion to confirm, respondent asserts that his problems "were of a continuing nature" and "totally beclouded his judgment to the point that he was not acting rationally."

An attorney who misappropriates client funds is presumptively unfit to practice law *(Matter of Pressment,* 118 AD2d 270, 273, citing *Matter of Marks,* 72 AD2d 399, 401; *Matter of Schmidt,* 145 AD2d 103, 108). While the presumption can be rebutted by a showing that the conversion was caused by mental illness *(see, Matter of Levine,* 101 AD2d 49, 50; *Matter of Malatesta,* 124 AD2d 62, 65), the absence of any medical proof here amply justifies the Hearing Panel's finding of no "direct connection" between respondent's personal problems and his misconduct.

Accordingly, the Hearing Panel's report is confirmed and the petition to disbar respondent is granted.

KUPFERMAN, J. P., CARRO, ASCH, KASSAL and WALLACH, JJ., concur.

Application of the Departmental Disciplinary Committee is granted, the Hearing Panel's report is confirmed, and the respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective February 5, 1991.